UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 SEP 16  PM 2: 08

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| State of Vermont, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 5:10-cv-95 |
| | ) |
| McGRX, Inc., d/b/a McGregor's | ) |
| Medicine-On-Time Pharmacy, and | ) |
| Audrey McGregor Reardon, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION
## GRANTING PLAINTIFF'S MOTION TO REMAND
(Doc. 10)

This matter came before the court on the motion by Plaintiff, the State of Vermont (the "State"), to remand this case to state court. (Doc. 10.) The Defendants, McGRX, Inc., d/b/a McGregor's Medicine-On-Time Pharmacy, and Audrey McGregor Reardon, the major shareholder and President of McGRX, Inc. (collectively, the "Defendants") oppose remand.

The State is represented by Vermont Assistant Attorneys General, Linda Ann Purdy and Mark J. DiStefano. The Defendants are represented by Matthew B. Byrne, Esq. and Robert F. O'Neill, Esq. For the reasons stated below, the court grants the State's motion to remand.

### Procedural and Factual Background

On March 31, 2010, the State filed a complaint against the Defendants in Vermont Superior Court, alleging violations of the Vermont Consumer Fraud Act, 9 V.S.A. Chapter 63 ("CFA") (Count I); the Vermont Medicaid Fraud Act, 33 V.S.A. § 143a (Count II); Breach of Contract (Count III); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV); Negligent Misrepresentation (Count V); and Unjust

Enrichment/Quasi-Contract (Count VI). The State seeks monetary and injunctive relief on behalf of Vermont Medicaid recipients and the State's Medicaid Program. It alleges that the Defendants overbilled for medication dispensing fees charged to the State, and overcharged administrative fees and co-payments to Medicaid recipients. In brief, the Complaint asserts that Defendant McGRX, as a Medicaid provider of pharmacy services to Medicaid recipients: (1) did not comply with an amended state rule that required certain drugs to be prescribed and dispensed in 90-day increments; (2) charged higher and unauthorized dispensing fees; (3) altered prescriptions in order to circumvent a five-refill limit imposed on certain drugs; and (4) impermissibly charged Medicaid recipients monthly administrative fees and excessive co-payments.

On April 19, 2010, the Defendants filed a notice of removal of the state court case. They maintain that the Complaint sets forth causes of action under the Medicaid statute, 42 U.S.C. §§ 1396-1396v, "concedes the federal nature of Medicaid," and "expressly relies on federal law as the basis for its claims." (Doc. 1 at 2.) Contending that this court has federal question jurisdiction over such claims, Defendants conclude that removal is proper.

The State filed a motion to remand on May 17, 2010. It asserts that the Complaint does not allege any federal claims and presents no substantial and disputed questions of federal law.

## Conclusions of Law and Analysis

### I. Standard of Review for Removal and Remand.

28 U.S.C. § 1441 governs federal removal jurisdiction. It provides, in relevant part,

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). If, as is the case here, there is no diversity of citizenship between the parties,

2

the propriety of removal turns on whether the case falls within the original "federal question" jurisdiction of the United States district courts: "The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1976 ed., Supp. V).

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983) (footnote omitted). "[T]he defendant bears the burden of demonstrating the propriety of removal." *Cal. Public Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quoting *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994)). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Childs v. Valente*, 2007 WL 805820, at *1 (D. Vt. Mar. 15, 2007) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

In determining whether an action may be removed, the focus is on the complaint and not on any defenses thereto:

> [I]t has become firmly settled that whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914) (citation omitted). The plaintiff is thus the "master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Towne v. Nat'l Life of Vermont, Inc.*, 130 F. Supp. 2d 604, 607 (D. Vt. 2000) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). Correspondingly, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (footnote omitted). A plaintiff may not, however, defeat removal by "omitting to plead necessary federal questions in a complaint, or framing an essentially federal case in terms of state law." *Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F. Supp. 2d 315, 317 (D. Vt. 1999) (quoting *Rivet v. Regions Bank of La.*, 522

3

U.S. 470, 474 (1998)). Moreover, "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)) (citations omitted).

The Supreme Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law . . ." *Franchise Tax Bd.*, 463 U.S. at 9 (citations omitted). "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). In assessing whether a case presents a substantial and disputed federal question, courts must be sensitive to issues surrounding "the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Bd.*, 463 U.S. at 8. Such determinations "require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810. As the Supreme Court observed in *Grable & Sons,* "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." 545 U.S. at 314.

"[I]f it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Towne*, 130 F. Supp. 2d at 606 (quoting *Franchise Tax Bd.*, 463 U.S. at 8).

## II. The Defendants' Claims in Support of Federal Question Jurisdiction.

As noted, the Defendants bear the burden of proving that removal was proper in the first instance. *WorldCom, Inc.*, 368 F.3d at 100. Their claims in support of federal court jurisdiction fall into two categories. First, they allege that the State's CFA claim, which arises under state law, nonetheless requires the court to interpret Federal Trade Commission ("FTC") case law and federal Medicaid regulations. Second, they assert that, in determining Counts II, III, and IV, the court must resolve several significant

4

federal issues related to the federal Medicaid statute, including whether Vermont's Medicaid regulations are consistent with federal law, and the proper interpretation of the federal Medicaid "dispensing fee."

### A. The Consumer Fraud Act Claim (Count I).

The Complaint asserts that the Defendants have engaged in unfair or deceptive acts or practices in commerce, contrary to 9 V.S.A. § 2453(a), by "(a) charging Medicaid recipients for 'administrative fees,' in violation of Medicaid regulations; (b) charging Medicaid recipients for excessive co-pays in violation of Medicaid regulations; and[ ] (c) charging Vermont Medicaid for dispensing fees in connection with the dispensing of unauthorized 7-day supplies of 'continuous use' drugs." (Doc. 5 ¶ 48.)

The Defendants argue that § 2453(b) of the CFA "expressly incorporates federal law into its interpretive section." (Doc. 12 at 4.) Section 2453 provides:

> It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States.

9 V.S.A. § 2453(b) (footnote omitted). Based on the text of the CFA, the Defendants maintain that the court will have to interpret federal law related to FTC practice and federal Medicaid regulations, and therefore the CFA claim belongs in federal court. The Defendants go on to say that the court "must determine whether McGregor's violated Medicaid regulations when it allegedly charged administrative fees and co-payments before the Court can determine if there is a violation of the Consumer Fraud Act." (Doc. 12 at 5.)

The CFA merely states that state courts will be *guided* by the Federal Trade Commission Act in construing subsection (a) of Section 2453 which provides that: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 9 V.S.A. § 2453(a). Were the Defendants' interpretation of § 2453(b) correct, every CFA claim would trigger federal court

5

jurisdiction simply because a Vermont court could look to federal court jurisprudence for guidance. There is no authority for this approach, least of all from the statute itself.

The Defendants' reliance on *Alford v. FedEx Ground Package Sys., Inc.*, No. 2:05-cv-252 (D. Vt. Feb. 1, 2006) for a contrary approach is misplaced. In *Alford*, the plaintiffs alleged that the defendant had violated a FTC Disclosure Rule which formed the factual and legal basis for the plaintiffs' further allegation that the defendant violated the CFA. The court reasoned that in order for the plaintiffs to prevail on their CFA claim, they had to establish that the defendant qualified as a "franchisor" under FTC regulations, that plaintiffs were "prospective franchisees" under the FTC regulations, and that the disclosure the plaintiffs received concerning their employment was inadequate under the FTC Rule. The defendant disputed the applicability of the FTC Rule as well as the allegation that the defendant had violated it. Because the complaint raised "substantial and disputed federal issues," the court concluded that federal court jurisdiction over the case was appropriate. *Id.* at 7.

Here, in contrast, the State's allegations do not require the court to interpret any FTC rules or regulations in order to resolve the State's CFA claim. Although a state court may look to the FTC for guidance, that alone does not confer federal jurisdiction. *See Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir. 1994) ("The fact that part of the state statutory scheme requires some analysis of federal law . . . is insufficient to invoke federal jurisdiction.") (citing *Moore v. Chesapeake & Ohio Ry. Co.*, 291 U.S. 205, 214-15 (1934)); *Pendergraph v. Crown Honda-Volvo, LLC*, 104 F. Supp. 2d 586, 589 (M.D.N.C. 1999) ("[T]he mere fact that a local ordinance is construed in accordance with a federal statute does not give rise to federal question jurisdiction. . . . Clearly, the state or local government's decision to look to federal law for guidance in interpreting state law does not federalize the cause of action.")(citations omitted). The court concludes that the State's CFA claim does not give rise to federal question jurisdiction.

## B. Grounds for Federal Jurisdiction in Counts II, III & IV.

The Defendants further argue that this lawsuit should remain in federal court because the State's claims are based on Medicaid, a federal program, and the Complaint seeks recovery based on applicable federal laws and regulations. The Defendants assert that federal jurisdiction is premised on the meaning of "dispensing fee," defined in the federal Medicaid regulations, and the case turns on whether that federal regulation authorizes more frequent dispensing. Finally, the Defendants contend that the Complaint raises the question of whether Vermont's Medicaid regulations, specifically their limit on reimbursement of more frequently dispensed drugs, comply with federal Medicaid law. The court addresses the Defendants' claims seriatim.

The Defendants first point out that the Complaint contains references to Medicaid laws, sets forth a claim that the Defendant breached its contract by failing to conform to "all applicable Federal and State laws and regulations," (Doc. 12 ¶ 55) and contains a Medicaid Fraud claim that asserts a violation of "Vermont or federal Medicaid laws or regulations, contrary to 33 V.S.A. § 141(d)." (Doc. 5 ¶ 52.) These references to federal Medicaid statutes or regulations are insufficient, however, to establish federal jurisdiction over purely state law claims.

The recent decision in *W. Va. ex rel. McGraw v. Rite Aid of W. Va., Inc.,* 2010 WL 454488 (S.D. W.Va. Feb. 1, 2010) is instructive. In that case, the defendant pharmacy removed to federal court the state's enforcement action brought in state court. The state alleged that state law required pharmacists to substitute less expensive generic drugs for brand name drugs, unless the generic drug was unsuitable for the patient. The defendant pharmacy argued that the conflict between the state's claims and federal Medicaid law conferred federal jurisdiction over the lawsuit. The court, however, rejected that argument, and remanded the case on the ground that the state's claims turned on whether the pharmacy dispensed drugs in accordance with West Virginia law. The pharmacy's conflict preemption argument, although it implicated a federal defense, did not establish federal question jurisdiction:

7

> Even assuming, *arguendo*, that the federal Medicaid program is implicated by plaintiff's claim in some limited degree, "*Grable* emphasized that it takes more than a federal element to open the arising under door." Simply touching upon a federal issue is not sufficient to qualify as "substantial and actually disputed" under the *Grable* test. Where, as here, tenuous connections to federal law exist, state courts are "competent to apply federal law, to the extent it is relevant."

*Id.* at *5 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (footnote omitted)). Accordingly, merely alleging a federal issue does not operate "as a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314; see also *Merrell Dow*, 478 U.S. at 813 (the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."). Indeed, "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is [still] subject to a possible veto," *Grable*, 545 U.S. at 313, because the court must still consider the effect an exercise of jurisdiction would have on the traditional balance of responsibilities between state and federal courts. *Id.* at 313-14. As the Supreme Court itself has noted, "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 22 n. 22. Here, the Defendants fall far short of identifying such a rule.

The Defendants next contend that the Complaint raises federal issues because it asserts that Vermont Medicaid "is a joint state and federal program that uses state and federal taxpayer funds to pay for medically necessary health care costs for low-income Vermonters," and because the "federal government contributes approximately 60% of Vermont Medicaid's budget." (Doc. 12 at 4.) These descriptive references to the joint federal-state Medicaid program and its sources of funding do not confer federal question jurisdiction. *See Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 585 (E.D. Pa. 2007) (federal Medicaid funding "does not, without more, confer federal jurisdiction.").

8

The *Zyprexa* cases cited by the Defendants are distinguishable. Those cases were originally filed in state court by states alleging state law causes of action. The states sought monetary and injunctive relief for the cost of medical care incurred by the states allegedly caused by the Zyprexa medication. The defendant removed the cases to federal court, where they were transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of New York. The states moved to remand. Key to the district court's finding of federal jurisdiction was the fact that the "national aspects of the Zyprexa litigation" made "[u]niformity in treating claims brought in this multidistrict litigation . . . desirable." *In re Zyprexa Prods. Liab. Litig.*, 2008 WL 398378, at *3 (E.D.N.Y. Feb. 12, 2008). The court further noted that the allegations that the defendant promoted improper "off-label" uses of Zyprexa were "central and disputed in this case," *id.* at *5, and that there was no state law equivalent of "off-label." The court observed that it is the Food and Drug Administration's "plenary and exclusive" responsibility to regulate prescription drugs and enforce laws with respect to those drugs which raised substantial federal questions. *Id.* Because "[r]esolution of the question of the state's obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal government, is essential to the state's theory of damages and presents a substantial and disputed federal issue under *Grable*," *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007), removal was proper and remand was denied.

In contrast, the State's claims in the instant case do not involve a similar federal mandate, do not overlap with the responsibilities of a federal agency, and do not present questions of national uniformity. Moreover, interpreting Vermont law does not "facially necessitate consideration of any federal law. Resolution of plaintiff's claims may be achieved simply by evaluating whether [defendant pharmacy] complied with state law." *West Virginia v. Rite Aid*, 2010 WL 454488, at *4.

The Defendants next contend that the Complaint's reference to the federal Medicaid regulation's definition of "dispensing fee" demonstrates that federal question jurisdiction is proper. In doing so, they magnify the significance of that definition and

9

contort the claims asserted by the State. There is no evidence to suggest that the court will "have to resolve the meaning of 'dispensing fee'" in order to resolve the issues presented. (Doc. 12 at 7.) In this case, the State takes issue only with the *frequency* of the Defendants' charged dispensing fees, a point the Defendants acknowledge: "The Court must resolve whether 42 C.F.R. § 447.502(2) [defining dispensing fee] authorizes more frequent dispensing." (Doc. 12 at 7.) The mere implementation of a federally defined term in a state enforcement action does not confer federal jurisdiction absent evidence that Congress so intended. *See New York v. Lutheran Ctr. for the Aging, Inc.*, 957 F. Supp. 393, 403 (E.D.N.Y. 1997) ("[W]here a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, nor require establishment of a ground for liability, federal jurisdiction will not lie."); *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 856 (D. Haw. 2006) (observing that "if Congress had thought that [average wholesale price] and other Medicare provisions implicated a substantial federal interest, it could have ensured that only federal courts would hear such cases," but it did not).

The Defendants' final contention is that the Complaint requires resolution of whether Vermont's Medicaid regulation, limiting reimbursement of more frequent pharmaceutical dispensing, complies with federal law. This issue implicates the Supremacy Clause and whether federal law preempts state law. Although Supremacy Clause and preemption issues constitute defenses that Defendants may raise, they do not in themselves confer federal jurisdiction. *See Merrell Dow*, 478 U.S. at 808 ("[a] defense that raises a federal question is inadequate to confer federal jurisdiction.").

In sum, Counts II, III, and IV neither raise substantial and contested federal issues, nor confer federal question jurisdiction over the state law claims set forth therein.

## C.     The Defendants' Request for the Exercise of Supplemental Jurisdiction.

As an alternative to federal jurisdiction arising from the claims set forth in the Complaint, the Defendants contend that this court may exercise supplemental jurisdiction

10

under 28 U.S.C. § 1367[1] because it has federal question jurisdiction over a different complaint, *McGRX, Inc. v. Vermont*, No. 5:10-cv-01. They argue that the "fact that the federal claims exist under a separate docket number is not a barrier to the exercise of supplemental jurisdiction." (Doc. 12 at 11.) To support this theory, they rely on *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006). In that case, the Second Circuit observed that:

> disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact. . . . In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped. . . [or] the federal claim necessarily brought the facts underlying the state claim before the court. This is so even if the state law claim is asserted against a party different from the one named in the federal claim.

*Id.* at 335 (citations and internal quotation marks omitted). The Defendants interpret *Achtman* as holding that a federal court can assume jurisdiction over a lawsuit that otherwise has no basis for federal jurisdiction simply because it contains common facts with another lawsuit for which federal court jurisdiction is present. At least one court has squarely rejected this approach:

> Section 1367 does not permit defendants to remove actions that are not properly removable under § 1441(a). If § 1367 could be used in this way, then § 1441(a)'s language limiting removal to only those actions of which district courts have original jurisdiction would be meaningless; a defendant could remove an action raising only state law questions whenever it could assert federal claims related to the same facts that gave rise to the plaintiff's lawsuit. This reading of § 1367 would make the defendant, not the plaintiff, master of the plaintiff's claim and would conflict with the Supreme Court's repeated affirmation of the "well-pleaded complaint rule."

*Calabro v. Aniqa Halal Live Poultry Corp.*, 2009 WL 4893200, at *2 (E.D.N.Y. Dec. 15, 2009). The court finds *Calabro* persuasive and adopts its reasoning here.

---

[1] Supplemental jurisdiction, governed by § 1367, allows a court to hear disputes that are part of the "same case and controversy" as the underlying action.

11

In any event, even if supplemental jurisdiction existed, here the court would decline to exercise it. As the Supreme Court has emphasized in a different context, "[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States." *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 683. "Such federalism concerns carry additional weight when applied to claims brought by the states." *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d at 586. Here, the State has chosen to file state law claims in state court against businesses that operate subject to the State's oversight, dispense pharmaceuticals to the State's residents, and charge the State's funds for certain fees. The Defendants have failed to identify any persuasive basis for this court to interfere with the State's choice, and assert federal jurisdiction over this lawsuit. Accordingly, this lawsuit was improperly removed to federal court and must be remanded to state court.

### Conclusion

For the reasons stated above, the court GRANTS the State's motion and REMANDS this case to state court.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of September, 2010.

Christina Reiss
United States District Court Judge

12